JULIUS M. KLEIN *v.* BUCK & MARKHAM.

1. CONTRACT. *Sale of insurance agency.   Covenant not to re-engage in insurance business.   Injunction for breach.   Insufficient defense thereto. Case.*

    Where the defendant has agreed, in writing, as a part of the consideration of a sale of his business as an insurance agent representing certain companies within a certain territory, not to re-engage in the insurance business within such territory, for a definite period, the fact that the purchaser has not executed certain notes he had agreed to give for installments of the purchase money is no defense to a proceeding by injunction brought by the vendee of such purchaser to prevent a violation of his agreement by the defendant, when it appears that the defendant had directed the payment of all the purchase money remaining due to certain of his creditors by an order in their favor which had been accepted

by the purchaser, the right to demand the notes, if any, being that of the creditors and not of the defendant.

2. SAME. *Notes for unpaid purchase money. Agreement to give same. Waiver by those beneficially interested.*

Where, in such case, the purchaser had himself sold and transferred the agency to another person, with the assent of the creditors named in the order, who released him from all liability as acceptor, on the execution by his vendee of an obligation to apply the receipts of the agency to the payment of their claims, the right to demand the notes agreed to be given to the defendant will be treated as waived by such creditors.

3. SAME. *Rescission of contract. Omission of acts essential thereto. Restoration of money paid.*

Although the purchaser, prior to sale to the enjoining complainant, may have demanded a rescission of the contract on the grounds that the representation's of defendant as to the annual receipts of the agency were untrue, and that he had violated the covenant against re-engaging in the insurance business, and the restoration of the sum paid by him in cash when the contract was entered into, and the defendant may have thereupon demanded the restoration of the agency as the purchaser received it—that is to say, with all of the companies represented in it—the contract will not be treated as rescinded when it appears that the defendant has not restored the money paid to him in cash, or relieved the purchaser of liability on his acceptance in favor of the creditors, and that the purchaser, who had lost control of one of the companies, has never in fact restored the agency to him.

4. SAME. *Covenant against re-engaging in business. When assignable.*

The covenant of the defendant not to re-engage in the insurance business was designed to give value to the agency he parted with, and as it contained no words restricting its benefits to the purchaser from him, the vendee of such purchaser, to whom it was in terms assigned, is entitled to the remedy by injunction to prevent its breach. *Anderson* v. *Faulconer,* 30 Miss., 145, distinguished.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

The opinion states the case.

*T. C. Catchings,* for the appellant.

1. Klein did not sell out to Armstrong in order to avoid lia-

bility, but to pay his debts, and for the purpose of securing them as large a sum as possible, and Armstrong being without right to complain of a breach of Klein's covenant against re-engaging in the insurance business, because of his failure to perform his own agreement to execute and secure promissory notes for the deferred payments of purchase money, his assignees, who can have no greater right than his, are not entitled to an injunction.

There is no merit in the suggestion that Klein cannot defend on the ground that Armstrong failed to execute and secure the notes. It is true, as stated, that he had given to the insurance companies the order accepted by Armstrong, and that those companies could thereupon deal with the deferred payments as they pleased, but his contention is that the fact that Armstrong had released him from liability for these payments, cannot have the effect of discharging the covenant made by Armstrong in respect to the notes, which was the consideration, in large part, of his agreement to refrain from the insurance business, and at the same time leave Klein's covenant in force.

It is not true absolutely, as argued by opposing counsel, that the acceptance of the order by Armstrong *ipso facto* discharged Klein from his liability to the companies. In accepting that order, Armstrong expressly did so subject to the conditions of the contract with Klein, which included his right to rescind. Klein was only to be released in case Armstrong executed the notes and continued the business. It would scarcely be contended that, if Armstrong had rescinded the contract, and the courts should have decided that he had a right to do so, that Klein would have been released. Under such circumstances Armstrong certainly would have been released, for his acceptance was based upon the conditions of the contract as stated, and he could avoid his liability, provided, under the conditions of that contract, he could rescind it. His rescission of the contract would have carried with it a rescission of the acceptance of the order, and, indeed, of the whole transaction. In such

case, Klein would have been liable to the companies, undoubtedly, as he was in the beginning. Klein, therefore, did have an interest, which was to see that Armstrong did not rescind the contract, but carried it out in good faith, for, until the notes were given and secured, he remained liable. Klein did not mean to bind himself to refrain from the insurance business whether Armstrong complied with his part of the contract or not, and Armstrong's contract was not to secure Klein's release from, but to pay, his debts to the amount of $13,000. Armstrong declared a rescission, insisted on it, declined to give his notes, and, by his conduct, created such apprehension on the part of the insurance companies that they accepted an inferior contract with Buck & Hackett. Armstrong, by his conduct, destroyed the spirit and intent of his contract with Klein, and neither he nor his assignees have any such equity as they contend for.

The consideration of Klein's covenant to refrain from the business of insurance was an agreement of Armstrong to pay $13,000, of which $9,000 was to be evidenced by two secured notes, payable in one and two years. If, as contended, the order of Klein upon Armstrong operated as an assignment to the insurance companies of his interest in these deferred payments so absolutely that they could do as they pleased with them, it is also true in law and fact that they could not release Armstrong from his obligation to Klein to pay the $9,000 by two secured notes, and at the same time hold Klein to his covenant to refrain from the insurance business, for his covenant was given in consideration of Armstrong's undertaking. The release of Armstrong necessarily had the effect of releasing Klein from his covenant.

2. The contract, in so far as Klein's covenant is concerned, cannot be enforced by Buck & Hackett or Buck & Markham. His covenant was with Armstrong only, and not with Armstrong and "his assigns." The word "assigns" appears only in that paragraph of article two of the contract which contains the

covenant, which is as follows: "Nor on behalf of any other agent than the party of the second part or his assigns." It is not contended that Klein is acting as the agent, or that he proposes to act as the agent, of any other insurance agent. Hence, he does not stand in the attitude of violating this part of his covenant. He is charged with acting, or intending to act, as an agent or solicitor himself of insurance companies. Neither by the rules of grammar or common sense can the words "his assigns," in the paragraph referred to, be applied to any other part of his covenant. The covenant being restrictive, must be literally construed. No words can be added to or taken from it. It is a personal one with Armstrong.

Section 660 of the code of 1892, relied upon by counsel for appellee, does not affect the question. That section was not intended to provide that all contracts might be assigned. Its purpose was simply to enable the assignee of such contracts as could be assigned to sue in his own name, when the assignment was in writing. If this covenant, therefore, is not such a one as could be assigned, the fact that it has been attempted to be assigned by writing, does not bring it within the terms of that section of the code. *Chicago, etc., Railroad Co.* v. *Packwood,* 59 Miss., 282. Whatever may be the ruling in other states, the question has been definitely determined in this state. *Anderson* v. *Faulconer,* 30 Miss., 145.

The adjudged cases, including some of those relied on by appellee, draw a just distinction between the good will of a business and a restrictive covenant of the kind here alleged. The sale of the good will of a business does not imply a contract on the part of the vendor to not again engage in a similar business. *Guerand* v. *Dandelet,* 32 Md., 562; *Hedge* v. *Lowe,* 47 Iowa, 137; *Greite* v. *Hendricks,* 78 N. Y. Sup. Ct. Rep. (71 Hun), 7. For instance, the contract between Klein and Armstrong, if the restrictive covenant entered into by Klein were entirely eliminated from it, would still convey to Armstrong the good will of the business, for in article one of the

contract the good will is mentioned as being conveyed along with the books, policies, etc. The restrictive covenant was something in addition to the good will, and was in no sense an incident of the business transferred. It was a separate, special, independent covenant, and, therefore, had no connection with the good will, and would not pass to the assignee as an incident of the business.

The case of *Navigation Co.* v. *Wright*, 6 Cal., 258 (65 Am. Dec., 511), cited on behalf of appellees, does not sustain their contention, for it is evident that, but for the peculiar words of the covenant and of the circumstances of the case, the court would have held that the covenant was not assignable. In *Diamond Watch Co.* v. *Roeber*, 106 N. Y., 473 (s.c. 60 Am. Rep., 464), the assignment of a restrictive covenant was maintained, because it was made with the covenantee and assigns.

In no case can the covenant be held to cover anything save local insurance in Vicksburg. 92 Am. Dec., 751, note.

*Miller, Smith & Hirsh*, for the appellees.

Fairly interpreted, the contract is assignable on its face. All of its parts must be considered together, and the construction contended for by appellant is a forced one that does violence to its spirit and intent. It is idle to say that Klein's covenant as to the assignees of Armstrong was limited to refraining from acting as the agent of any other insurance agent, while it is conceded that the covenant with Armstrong precluded his engaging in the insurance business in any manner. The language of the instrument does not admit of that interpretation.

A covenant of this character has uniformly been construed as constituting a part of the good will of the business or property sold, and passes with the property when transferred, because it adds value to the business, and when the business is transferred the covenant necessarily goes with it. *Gompers* v. *Rochester*, 56 Pa. St., 194; *Pemberton* v. *Vaughn*, 59 Eng. C.

L. Rep., 87; *Greite* v. *Hendricks*, 71 Hun (N. Y.), 7; *Hedge* v. *Lowe*, 47 Iowa, 137; *Jacoby* v. *Whittemore*, 49 L. J. N. S., 335; *Guerand* v. *Dandelet*, 32 Md., 561; *California Steam Navigation Co.* v. *Wright*, 6 Cal., 258.

The case of *Anderson* v. *Faulconer* (30 Miss.) rested on the peculiar language of the covenant involved, and the opinion is not susceptible of the interpretation given to it by opposing counsel. Anderson had died, and Stith, the other covenantee, had sold out his interest to him before his death. As the covenant was against setting up a printing establishment in the same town, in opposition to Anderson & Stith, as proprietors of a certain paper, the covenant was at an end, for neither of the covenantees retained any interest in the paper.

2. There is no merit in the argument that because Armstrong failed to give the notes for $4,000 and $5,000, Klein was released from his covenant to refrain from engaging in the insurance business. The order on Armstrong given by Klein to his creditors operated as an absolute assignment by Klein in their favor of the entire fund due by Armstrong. It then became their property, and he had nothing further to do with it. *Bush, Redmond & Co.* v. *Foote*, 58 Miss., 12; Daniel on Neg. Inst., § 21. The agreement to execute these notes was manifestly changed by the subsequent agreement between Klein and Armstrong, resulting in the giving and acceptance of the order and the assent thereto by the insurance companies to which Klein was indebted. The proper remedy was invoked. High on Inj., 1167, 1168; *Butler* v. *Burleson*, 16 Vt., 176; *Guerand* v. *Dandelet*, 32 Md., 561; Pomeroy's Eq. Jur., 1343.

Argued orally by *J. Hirsh*, for the appellees.

COOPER, C. J., delivered the opinion of the court.

The appellees sought and secured an injunction against the appellant restraining him from engaging in the business of insurance agent, solicitor, etc., in Vicksburg or elsewhere in the

territory covered by the business of certain agencies of which he had formerly had control, as will more fully hereinafter appear. From the decree perpetuating the preliminary injunction, this appeal is taken. The facts upon which the controversy turns are as follows:

For several years prior to September 14, 1893, the appellant was the agent in Vicksburg of several fire insurance companies, to some or all of which he had become indebted. The aggregate of such indebtedness exceeded $13,000. On September 14, the appellant entered into a written contract with C. E. Armstrong for the transfer of his insurance business to Armstrong for the agreed price of $13,000, of which sum Armstrong was to pay, on October 2, the sum of $4,000 in cash, and was then to execute two notes, one for $4,000 and one for $5,000, due, respectively, in one and two years, with interest at six per cent. per annum from date, which notes were to be made payable to said Klein or his order. The second paragraph of this contract, on which this proceeding rests, is as follows: "And the party of the first part [Klein] covenants and agrees with the party of the second part [Armstrong] that, in addition to maintaining for him the good will of said business and its patronage, in so far as his influence may extend, he will not, either directly or indirectly, as the agent of any insurance company, or solicitor for such company, nor on behalf of any other agent than the party of the second part, or his assigns, engage in the insurance business in the city of Vicksburg, or elsewhere in the territory covered by the business of his own agencies, for the full term of five years from this date; nor will he, during that term, assist as clerk, secretary or otherwise, in any other insurance office in said city or within the territory aforesaid."

It was recited in the contract that it was entered into upon the representations made by Klein that the average volume of business which had been done by his agency for the past three years was $59,958; and, also, upon his engagement to secure

from the companies he had represented, and which are named
in the contract, a transfer of their respective agencies to Arm-
strong; and it was stipulated that, if, upon full investigation of
the books, the average annual receipts should appear not to
have been as much as represented by Klein, or if he should
fail to secure the transfer of its agency by any of the com-
panies, then Armstrong should, at his option, either rescind
the contract or make a reduction from the price he was to pay,
in certain proportion fixed by the terms of the contract.

On September 19 Klein addressed to Armstrong the follow-
ing writing:

"VICKSBURG, MISS., September 19, 1895.

"*Charles E. Armstrong, Esq.:*

"Please pay the following sums to the following companies,
payment to be made on terms and conditions of our contract
for sale of my insurance agency—viz.:

To the Phœnix Insurance Co. of New York.........$ 5,129 00
To the Insurance Co. of N. A. ....................   199 00
To the Southern Insurance Co. of N. O. ...........   527 00
To the Mechanics' & Traders' Ins. Co. of N. O.... 1,099 00
To the Home Insurance Co. of N. Y.................   720 00
To the New Orleans Insurance Assn. ...............   325 00
To the Crescent Insurance Co. of N. O. ........... 3,186 92
                                                 _____
                                                  $11,185 92

"And, after paying $814.08 to the Royal Insurance Co. of
Liverpool, which you have accepted, pay the balance due me
of the $13,000 purchase money to the Liverpool, London &
Globe Insurance Co., it being understood that the acceptance
of said amounts by the respective companies is to be in full
discharge of my indebtedness to them up to August 31, 1893,
inclusive, except the Liverpool, London & Globe, and that all
unpaid bills for insurance prior to this month are turned over
to me, and, as fast as collected, I am to appropriate proceeds
to payment of balance due to said Liverpool, London & Globe
Insurance Co., and to retain any balance after paying same;
but this is not to release the trust deed given them until their
claim is fully paid.          (Signed)      J. M. KLEIN."

On which order Armstrong indorsed the following: "The within order is accepted so far as the payments by cash and notes are concerned, subject to the conditions of contract between J. M. Klein and myself of date September 14, 1893. With the other portions, relating to release by companies and the collection and appropriation of bills prior to September 1, 1893, etc., I am in no way concerned or responsible.

"( Signed)   C. E. ARMSTRONG."

Armstrong was never called upon by Klein to execute notes, as he had agreed to do in his contract of purchase from Klein. He paid the sum of $4,000 cash, as he had agreed to do, but, finding, as he says, that the representations made by Klein as to receipts from the agency were not correct, because a part of the receipts were derived from companies whose agencies were not transferred to him, and a part from reinsurance, on which full commissions were not received, and having reason, as he supposed, to believe that Klein had, in contravention of his covenant, engaged in the insurance business in Vicksburg, he declined to execute notes to some of the companies who requested him so to do.

It also appears that Armstrong notified Klein that he would elect to rescind the contract of purchase, and demanded the return of the money he had paid out. Whereupon Klein demanded that Armstrong should restore the agency as he had received it—*i. e.*, with all the companies represented in it. But, as one of the companies had withdrawn, and Armstrong could not, as he supposed, control the others, and not recognizing any duty on his part to endeavor so to do, this attempted rescission was abandoned.

In January, 1894, Armstrong sold the agency to Buck & Hackett, who assumed the payment of the nine thousand dollars for which Armstrong had given his acceptance, under an arrangement satisfactory to the companies, and which released Armstrong, but which bound only the receipts of the agency, and not Buck & Hackett personally. Afterwards Hackett sold

out his interest in the agency to Markham.   In the transfer
from Armstrong to Buck & Hackett he assigned, in terms, the
covenant of Klein not to engage in the insurance business, as
above set forth.

Klein having engaged in the business of insurance at Vicks-
burg, Buck & Markham sued out the injunction in this cause.
It is contended for appellant that the injunction ought not to
have been decreed, (1) because Armstrong did not execute the
notes for the deferred payments, as he, by the contract, was
bound to do; (2) because Armstrong exercised his right of re-
scission of the contract, of which the covenant was a part; (3)
because the covenant was with Armstrong personally, and not
with him and his assigns, wherefore it was not assignable.

None of these contentions can be maintained.

1. By giving to the companies an order upon Armstrong for
the purchase price of the agency, Klein, of course, absolved
him from the duty of executing the notes payable to himself,
and if it be conceded that the companies, by virtue of the trans-
action, had the right to call upon Armstrong for the notes, it
was a right pertaining to them which they could and did waive
by assenting to the transfer of the agency by Armstrong to
Buck & Hackett, and by accepting, in lieu of Armstrong's
personal liability on his acceptance, the security afforded them
by the obligation assumed by Buck & Hackett.

2. The so-called rescission was never consummated, nor so
understood by Klein.   The right of rescission imported the
restoration to Armstrong of the $4,000 he had paid in cash,
and this Klein refused to repay.   Armstrong clamored for re-
scission, and declared that he would and had exercised his option
to rescind.   But Klein had control of the situation, and refused
to execute his part of the contract by restoring the money paid,
and neither party thereafter acted as though there had been a
rescission.   Klein did not return to the possession of the agency,
nor repay the money paid out by Armstrong, nor relieve him
from his obligation on the acceptance he had given the com-

panies, and Armstrong continued in the business until it was sold by him to Buck & Hackett. The court, looking at what was done, and not to what was said only—to the substance, and not to the shadow under which Klein now seeks shelter—can readily perceive the truth that there never was a rescission of the contract.

3. Counsel's contention that the covenant of Klein not to engage in the insurance business was personal to Armstrong, and not assignable, rests upon the decision of this court in *Anderson* v. *Faulconer*, 30 Miss., 145. In that case, Faulconer had sold to Anderson & Stith a newspaper outfit, including the subscription list, good will, etc., and entered into the following covenant: ''And the said Faulconer also hereby agrees with the said Anderson & Stith that he will not set up or establish, in the town of Holly Springs, any printing establishment *in opposition to the said Anderson & Stith as proprietors of the Holly Springs Gazette.*'' The court, in construing this covenant, held that, by reason of the words we have italicized, the covenant was personal to Anderson & Stith, and did not inure to the benefit of a purchaser from the administrator of Anderson, who, in his lifetime, had bought out the interest of Stith. We are not called upon to say whether the court in that case did or did not convert a covenant intended and understood by the contracting parties to be one for the protection of the good will of the business sold into one personal to the purchasers, for the covenant now under consideration contains no words restricting its usual and pertinent construction. There can be no doubt that its purpose was to give value to the business assigned, and, as such, its benefit passed to the assignees of Armstrong, who were entitled to the remedy of injunction to prevent its breach.

The authorities cited in the brief of appellee's counsel sufficiently support this view, and need not be supplemented by the citation of the many other cases which may be found, a number of which are referred to in the authorities cited by counsel.          *The decree is affirmed.*