This case is before the Court on appeal from the Chancery Court of Lauderdale County, where on December 19, 1984, the lower court entered an order finding that Harry F. Cooper, Jr. (appellant) had breached a covenant not to compete which he had voluntarily made when he sold a sand and gravel business. Further, the lower court enjoined Cooper from proceeding with the business found to be in violation of the covenant. From this adverse decision, Cooper appeals alleging four (4) assignments of error. Finding no error, we affirm.
 FACTS
Blackwell Sand Company was a family owned business, operating as a sole proprietorship/partnership, of long standing in Lauderdale County, which engaged in the mining and selling of gravel, dirt, top soil, unwashed and washed sand. It was the sole company in Lauderdale County that mined and washed its own sand, although several other businesses sold sand which was brought into the county from other places. The bulk of Blackwell Sand Company's business represented sales to repeat customers in the construction business.
On August 19, 1976, appellant purchased Blackwell Sand Company from Leroy Blackwell along with the name "Blackwell Sand Company." On April 1, 1981, appellant sold "Blackwell Sand Company" to Larry Stewart. The agreement between appellant and Stewart was two-fold in nature: one, being a lease of certain real property; and two, being a sale of Blackwell Sand Company, including its property, name, and goodwill. Further, the agreement contained a covenant not to compete which provided that:
 COVENANT NOT TO COMPETE:
 Lessor expressly recognizes that Lessee is entering into this agreement for the express purpose of entering the sand business upon the property described herein and with the equipment being purchased hereby. Lessor acknowledges that Lessee is not trained in and does not have experience in the said business and that a substantial amount of the total considerations being paid is for the express purpose of having Lessor no longer engaged in the sand, fill dirt, top soil or other competing business, and being no competition to Lessee's future efforts. Accordingly, Lessor expressly covenants and agrees with Lessee that he will not enter into the sand business within one hundred (100) miles of Meridian, Mississippi for a period of ten (10) years from and after the date hereof. Lessor covenants that during said period and within said area he will not directly or indirectly be employed by, advise with, consult with or in any manner lend aid, advise or assistance to any other person, firm or corporation engaged in the sand business.
 Lessee agrees not to compete with Lessor and agrees not to enter into any business which relates to the sanitary landfill operation now conducted by Lessor and further agrees not to compete in any chemical waste disposal, hazardous waste disposal or any other type of waste disposal operation. Lessee further agrees that he will not compete with the Lessor in the operation of his drainage *Page 902 
and metal culvert installation, maintenance and sale business.
 Lessor and Lessee recognize that this covenant is a vital and a very specific part of this agreement and that it may be enforced in equity or otherwise and should the provisions of this paragraph be enforced judicially or otherwise the periods of limitation prescribed herein shall be deemed to begin with the date any such judicial action becomes final.
Cooper had such an agreement with Leroy Blackwell.
On February 1, 1982, Larry Stewart assigned all of his interest in Blackwell Sand Company to appellee, Lamar Gidden, who had been his partner. Ensuingly, Cooper began making preparations to re-enter the sand and gravel business. Toward this end, Cooper purchased land near Blackwell Sand Company; sand washing equipment; and a listing in the telephone directory under the name "Cooper Sand and Gravel." Upon the discovery of such steps, Gidden, the assignee of Blackwell Sand Company from Stewart, filed a complaint for an injunction and attorney's fees in the Chancery Court of Lauderdale County.
On December 12, 1984, a trial was conducted. The lower court found that appellant had entered into an agreement with Larry Stewart on April 1, 1981, whereby he sold Blackwell Sand Company and covenanted not to compete as shown above. Further, the lower court found that all rights, including the covenant not to compete, which appellant sold to Stewart could be validly and effectively assigned to Gidden. Upon this basis, the lower court determined that Cooper had breached the covenant and enjoined him from engaging in the sand, fill dirt, top soil and gravel business through April 1, 1991, within a one hundred (100) mile radius of Meridian, Mississippi. Cooper was ordered to pay Gidden's attorney's fees in the amount of $1,250.00 and all court costs. It is the above determination that Cooper appeals.
 I. DID THE LOWER COURT ERR IN FINDING THAT APPELLANT'S PERSONAL COVENANT NOT TO COMPETE WITH LARRY STEWART EXTENDED TO THE BENEFIT OF APPELLEE? II. DID THE LOWER COURT ERR WHEN IT REFUSED TO RECOGNIZE THAT APPELLANT'S PERSONAL COVENANT WITH LARRY STEWART TERMINATED IPSO FACTO WHEN LARRY STEWART SOLD HIS BUSINESS TO APPELLEE?
In the trial below, the lower court, in rendering its opinion, as such pertained to the covenant not to compete now at issue, stated that whether or not such was a personal covenant, only binding Harry Cooper not to compete with Larry Stewart was irrelevant. The trial court found that, "the covenant not to compete is an integral part, it is the spinal cord, it is the life stem in the state of a business," and as such, the covenant not to compete represented the sale of Blackwell Sand Company's goodwill, and could be assigned to Gidden, as could any other portion of the contract that composed a basis for the bargain.
As a general annunciation of the law of assignments, in regards to covenants not to compete in the sale of a business, it has been stated that:
 Assignability of Rights Against Competition
 There are many cases in which the vendor of a business contracts with the vendee not to open a competing business. Such a promise may be implied from the fact that "goodwill" is included in the sale. The right that the vendee thus obtains against the vendor is itself assignable to a new vendee along with the business. It is not necessary that the original transfer should have been expressly made to the vendee "and his assigns"; nor is it necessary that on the sale to a new vendee the right that the original vendor shall not compete shall be specifically mentioned. The intention that it shall be included in the goodwill and shall go along with the business may readily be inferred. When the right exists, it can ordinarily be specifically enforced by injunction. (emphasis added) *Page 903 
4 Corbin on Contracts § 885, p. 555 (1951). Thus, on subsequent re-sale of a business, all contractual rights received by an original purchaser, including the goodwill of the company, could be validly assigned. 38 Am.Jur.2d Goodwill § 11 (1968).
Cooper argues that the covenant not to compete entered into as an integral part of the sale of Blackwell Sand to Stewart, was a personal covenant, in that he, as vendor of the business, contracted only to not compete with Stewart as vendee, only so long as Stewart remained in the sand and gravel business. Upon this basis, Cooper maintains that Gidden, as assignee of Stewart, would not get any right that Cooper shall not compete with him.Anderson v. Faulconer, 30 Miss. 145, 147 (1855); 4 Corbin on Contracts § 885, p. 558 (1951).
In Faulconer, supra, Faulconer had sold to Anderson and Stith a newspaper printing company, including the subscription list, goodwill, etc., and entered into the following covenant:
 And the said Faulconer also hereby agrees with the said Anderson and Stith that he will not set up or establish in the town of Holly Springs any printing establishment in opposition to the said Anderson and Stith as proprietors of the Holly Springs Gazette.
(emphasis added)
The court, in construing the covenant, held that by reason ofthe words of restriction that have been emphasized, the covenant was personal to Anderson and Stith and did not accrue to the benefit of a purchaser from the administrator of Anderson, who had in his lifetime bought out Stith's interest in the concern.Faulconer at 147. Corbin, in his treatise on contracts, footnotes the Faulconer case as representative of the rule of law that:
 If the vendor of a business contracts not to compete with the vendee as long as the vendee remains in the business, an assignee of the vendee would not get any right that the vendor shall not compete with him.
(emphasis added)
4 Corbin on Contracts § 885, p. 558 (1951). Thus, Cooper argues that under the above stated rule, on the subsequent assignment of Blackwell Sand to Gidden, he is no longer bound by his "personal" covenant with Stewart not to compete in the sand and gravel business.
In Klein v. Buck, 73 Miss. 133, 18 So. 891 (1895), we noted that the Faulconer case stands for the proposition that where words restricting the usual and pertinent construction of a covenant not to compete are used, such may act to convert the sale of the goodwill of a company into a simple personal covenant. The Klein case presented the Court with a situation where Klein entered into a written contract with Armstrong for the transfer of his insurance business to Armstrong. The contract contained the following covenant:
 And the party of the first part [Klein] consents and agrees with the part of the second part [Armstrong] that in addition to maintaining for him the goodwill of said business and its patronage, insofar as his influence may extend, he will not either directly or indirectly as the agent of any insurance company, or solicitor for such company, nor on behalf of any other other than the part of the second part or his assigns, engage in the insurance business in the city of Vicksburg or elsewhere in the territory covered by the business of his own agencies for the full term of five years from this date.
Armstrong later sold the agency to Buck and Hackett. Subsequently, Hackett sold out his interest to Markham. Klein then went into the insurance business in Vicksburg, and Buck and Markham brought suit, obtaining an injunction. On appeal, this Court held that there was no doubt that the covenants purpose was to give value to the business assigned, and, as such its benefit passed to the assignees of Armstrong. As there were no words ofrestriction in the covenant that would make it personal in nature, the remedy of injunction to prevent its breach was proper. Klein at 144, 18 So. at 893.
The covenant presently at hand provides that:
 Accordingly, Lessor expressly covenants and agrees with Lessee that he will not enter into the sand business within one *Page 904 
hundred (100) miles of Meridian, Mississippi for a period of ten (10) years from and after the date hereof. Lessor covenants that during said period and within said area he will not directly or indirectly be employed by, advise with, consult with or in any manner lend aid, advice or assistance to any other person, firm or corporation engaged in the sand business. (emphasis added)
The lower court found that, by the above words Cooper had, in a general manner, covenanted not to compete in the sand and gravel business in accord with the covenant. A covenant not to compete will be given general application unless, by its own terms, it specifically expresses an intent that it be a personal covenant flowing only to the original obligee. Thomas v. McCrery,147 So.2d 467, 469 (La. 1963). An agreement by a seller of his business and goodwill to refrain from competing with the buyer is not personal unless specifically made so, but inures to the benefit of one to whom it is assigned with the business. Knowlesv. Jones, 182 Ala. 187, 62 So. 514 (1913). The covenant presently at bar was obviously intended and understood by the contracting parties to be one for the protection of the goodwill of Blackwell Sand. As it lacks the necessary restrictions to make it a personal covenant, these assignments of error are without merit.
 III. DID THE LOWER COURT ERR IN NOT REQUIRING APPELLEE TO PROVE THE REASONABLENESS OF THE RESTRAINT WHICH HE SOUGHT TO IMPOSE BY THE COVENANT NOT TO COMPETE, AND IN NOT REQUIRING APPELLEE TO OVERCOME THE PRESUMPTION THAT SAID COVENANT IS VOID?
At trial, the lower court made the following determination concerning the reasonableness in time and area of the covenant not to compete:
 I assume the fifth defense goes to time and geographic location. The Court finds it is economically justified, because the parties agreed to it. Restraint for non-competition, according to the law, must be reasonable as to time and place. The Court finds that this is reasonable, because the testimony before the Court was that gravel is hauled into Meridian from Columbus, Heidelberg — I have forgotten some other place. Columbus is approximately 90 miles from Meridian. So, a 100-mile radius is not unreasonable in the building trade for this type product. More importantly, Mr. Cooper found this to be reasonable when he purchased the business. Mr. Cooper found it to be reasonable when he sold the business. Mr. Cooper only questioned the reasonableness when that which he found to be reasonable was being used against him. I feel that his actions speak louder than his words, and he has shown that acquirement is reasonable as to time and geographic location.
The proof to support the chancellor's opinion was that Blackwell Sand Company was a family owned business in Lauderdale County whose patronage and goodwill consisted mostly of repeat customers and home builders. It was the only company that mined its own sand in the county. Due to a fixed overhead, the profit margin of the company depends on a large-volume sale. Appellee testified that he had such a covenant not to compete with Leroy Blackwell, the original owner of the business. Further, the lower court took judicial notice that the trade area of the business, which stretched to Columbus, Mississippi, was within the 100-mile restriction placed in the covenant.
Cooper argues that non-competition agreements are not favored in law, and the person seeking to enforce such covenant bears the burden of proving their reasonableness. Thames v. Davis GouletIns., Inc., 420 So.2d 1041, 1043 (Miss. 1982). On this basis Cooper contends that the facts presented at trial, as set forth above, do not meet this reasonableness requirement.
At this juncture, it must be noted, that our decision in theThames case deals specifically with covenants not to compete in an employer-employee setting. In fact, this Court stated inThames that, "the employer bears the burden of proving their *Page 905 
(covenants not to compete) reasonableness." We recognize that there is a valid and accepted distinction between covenants not to compete in an employer-employee setting, and those dealing with the sale of a business, as in the present case. 46 A.L.R.2d, pp. 144-147 (1956). The essential line of distinction between the two (2) settings is that:
. . . the purchaser is entitled to protect himself against competition on the part of the vendor, while the employer is not entitled to protection against mere competition on the part of a servant. In addition thereto, a restrictive covenant ancillary to a contract of employment is likely to affect the employee's means of procuring a livelihood for himself and his family to a greater degree than that of a seller who usually receives ample consideration for the sale of the goodwill of his business. Thus, generally speaking, the territorial extent of a restrictive covenant entered into by the seller or purchaser of a business will be upheld by the courts with much greater readiness than the same provision would as part of a restrictive covenant ancillary to a contract of employment. (emphasis added)
Id. at 144. As such, we must scrutinize to a lesser degree the pertinent facts supporting a finding of reasonableness where the sale of a business's goodwill is involved.
The chancellor below determined, as a factual matter, that the covenant not to compete was reasonable in time and space, in that it was drafted pursuant to the sale of a business. This Court will not on appeal set aside the chancellor's finding of fact as to reasonableness unless such is manifestly wrong. Dillon v.Dillon, 498 So.2d 328 (Miss. 1986); Country Club of Jackson v.Saucier, 498 So.2d 337 (Miss. 1986). Viewing the previously stated facts, we cannot say that a finding of reasonableness was manifestly wrong. The assignment of error is without merit.
 IV. DID THE LOWER COURT ERR IN DENYING APPELLANT DUE PROCESS AND IN ASSUMING FACTS NOT IN EVIDENCE?
In rendering his opinion finding the covenant not to compete to be reasonable as to time and space, the chancellor noted that when Cooper bought Blackwell Sand Co., he had a similar covenant with Leroy Blackwell. The source of this fact, which the chancellor relied upon, was the appellant who testified on more than one occasion at trial that he had a similar agreement with Blackwell. As such, appellant's contention that the lower court's judgment was not based on facts before the court, Tisdale v.Jefferson Standard Life Ins. Co., 244 Miss. 839, 147 So.2d 122
(1962), simply is not borne out. Additionally, as previously mentioned, the lower court's determination of the reasonableness of the document was supported by other facts in evidence. The assignment of error is meritless.
 CONCLUSION
After reviewing the present case, we are confident that Cooper entered into a valid covenant not to compete, reasonable as to both time and geographic location, as was found by the chancellor. There were no words of restriction placed in the covenant that would specifically express an intent on the part of Cooper to make the covenant personal, and as such it could be validly assigned to Gidden. Finding no errors in the trial below, the judgment of the chancellor, enjoining appellant from violating the covenant not to compete through April 1, 1991, within a radius of one hundred (100) miles of Meridian, Mississippi, and awarding attorney's fees is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur. *Page 906