616 So.2d 892 (1993)
HERRING GAS COMPANY, INC.
v.
C. Gaston WHIDDON d/b/a South Mississippi LP Gas Company.
No. 90-CA-1140.
Supreme Court of Mississippi.
March 25, 1993.
*893 John L. Maxey, II, S. Mark Wann, Maxey Pigott Wann & Begley, Jackson, for appellant.
William E. Andrews, III, Purvis, for appellee.
Before HAWKINS, P.J., and McRAE and ROBERTS, JJ.
McRAE, Justice, for the Court:
This appeal challenges the final decision and judgment of the Chancery Court of Lamar County holding that the covenant not to compete executed by C. Gaston Whiddon, seller of a retail LP gas business to Curtis J. Dufour, III, was not enforceable by a subsequent purchaser. Finding error in the chancellor's application of pertinent legal standards, the case is reversed and rendered as to liability and remanded for a trial on damages, if any, due to Herring Gas Company, Inc.

FACTS
On August 31, 1987, Curtis J. Dufour, III, (Dufour) purchased Gaston's LP Gas Company, Inc. (Gaston's LP), a corporation, whose sole shareholder was C. Gaston Whiddon (Mr. Whiddon). The purchase contract executed by Mr. Whiddon, Gaston's LP, Dufour and Betty Whiddon (Mrs. Whiddon), provided, inter alia, the following:
WHEREAS, C. Gaston Whiddon has administered the business since inception and a large part of the success of the business is based on his reputation and it is extremely important to the viability of the business that C. Gaston Whiddon lend his verbal support and experience to the benefit of Gaston's LP Gas Company, Inc. for a stated period of time and that C. Gaston Whiddon covenant not to compete with Gaston's LP Gas Company, Inc. for a reasonable period of time and in a reasonable area;
* * * * * *
Seller shall lend his support to Gaston's LP Gas Company, Inc. and encourage the patronization of Gaston's LP Gas Company, Inc. by old and prospective customers for, at least, the next nine (9) years. Seller further agrees not to compete, directly or indirectly, as owner, employer, officer, director, consultant, representative, or agent of any entity with Gaston's LP Gas Company, Inc. in South Mississippi (defined as Mississippi south of Interstate Highway 20) for nine (9) years after closing. Seller understands that his support and lack of competition is important to the continued viability and progress of the business of Gaston's LP Gas Company, Inc. and agrees that the restriction on competition in South Mississippi and for nine (9) years is reasonable in terms of distance and time and is necessary to assure that Purchaser gets that for which he paid.
As a part of the purchase contract, Dufour agreed to continue the employment of Mrs. Whiddon for a term of nine (9) years at a stated salary of $33,000.00 per annum, and to provide her with certain fringe benefits.
On April 30, 1990, Dufour, Gaston's LP, Mr. Whiddon and Mrs. Whiddon executed an amended contract which released Gaston's LP and Mrs. Whiddon from the employment contract set out in the purchase agreement of August 31, 1987; provided for payment to Mrs. Whiddon the sum of $135,000.00 in cash; and released Mr. Whiddon, Mrs. Whiddon, Gaston's LP and Dufour from "any and all other obligations under their covenants not to compete with Gaston's LP Gas Company, Inc. except that covenant not to engage, directly or indirectly, as sole proprietor, partner, officer, director, employee, or advisor in the retail sales and/or distribution of liquified petroleum gas or otherwise compete with said liquified petroleum retailer in South Mississippi, defined as the entire state of Mississippi, south of U.S. Highway 80, at any time within two (2) years of the date of this instrument."
On May 1, 1990, the retail LP gas business was sold to Herring Gas Company, *894 Inc. (Herring), pursuant to a contract which provided, inter alia:
WHEREAS, Herring Gas Co., Inc. wishes to purchase said liquified petroleum gas retail business; and
WHEREAS, Gaston's LP Gas Co., Inc. wishes to sell said liquified petroleum gas retail business; and
WHEREAS, Gaston's LP Gas Co., Inc. and Herring Gas Co., Inc. have agreed upon mutual consideration to be exchanged in the sale and purchase of said liquified petroleum gas retail business; ... .
When the retail LP business was sold to Herring, Dufour retained the corporate entity and subsequently changed its name.
Shortly after the purchase, Herring learned that Mr. Whiddon was preparing to re-enter the retail LP gas business within the area restricted by the provisions of the amended contract executed by Dufour, Gaston's LP and Mr. Whiddon on April 30, 1990. Dufour and Herring notified Mr. Whiddon that they objected to his re-entry into a competing retail LP gas business within the restricted area. The objections were unheeded by Mr. Whiddon, resulting in the present action by Herring, who sought a declaratory judgment against Mr. Whiddon and requested that the court find Mr. Whiddon's action violated his covenant not to compete. Further, he sought an injunction prohibiting any action by Mr. Whiddon violative of his covenant. The chancellor, upon conclusion of the evidence, denied the relief sought by Herring, dismissed the complaint, awarded Mr. Whiddon $1,250.00 as a contribution toward his attorney's fees, and assessed Herring with all court costs. The court's final judgment recites, inter alia:
By the specific wording of the contractual agreements between Whiddon and Dufour the covenant not to compete was personal to Gaston's LP Gas Company, Inc. The specific wording of the contracts are restrictive and limited the noncompetition covenant to and for the benefit of Gaston's LP Gas Company, Inc., only. The law requires a strict construction of covenants not to compete and that coupled with the specific language of the agreement clearly reflects that the Plaintiff may not now seek to enforce the covenant against Whiddon.
Herring appeals, asserting that Mr. Whiddon's covenant not to compete was assignable, was transferred to, and is enforceable by Herring as a result of its purchase of the LP retail gas business from Gaston's LP.

LAW
Our appellate review is limited by familiar rules. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1313 (Miss. 1989); Bullard v. Morris, 547 So.2d 789, 791 (Miss. 1989); Johnson v. Hinds County, 524 So.2d 947, 956 (Miss. 1988); Gibson v. Manuel, 534 So.2d 199, 204 (Miss. 1988); Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss. 1985).
Herring places its principal reliance for reversal on our ruling in Cooper v. Gidden, 515 So.2d 900 (Miss. 1987). In Cooper, Blackwell Sand Company, a sand and gravel business, was sold to Cooper in 1976. In 1981, Cooper sold the business to Larry Stewart. The purchase by Stewart from Cooper was two-fold in nature: (1) a lease of certain property; and (2) a sale of the company including its property, name and goodwill.
The purchase agreement contained a covenant not to compete. This covenant provided that Cooper would not enter the said business within one hundred (100) miles of Meridian, Mississippi, for a period of ten (10) years from and after the date thereof; and during said period of time Cooper would not directly or indirectly be employed by, advise with, consult with or in any manner lend aid, advice or assistance to any other person, firm or corporation engaged in the same business.
In 1982, Stewart assigned his interest in the company and business to Gidden. Later, *895 Cooper made preparations to re-enter the sand and gravel business and Gidden sought relief via chancery injunction. The trial court determined that Cooper's covenant inured to the benefit of Gidden as Stewart's assignee and that Cooper breached the covenant. Cooper was enjoined from proceeding in violation of his covenant. We affirmed the chancellor's decision and stated:
As a general annunciation of the law of assignments, in regards to covenants not to compete in the sale of a business, it has been stated that:
Assignability of Rights Against Competition

There are many cases in which the vendor of a business contracts with the vendee not to open a competing business. Such a promise may be implied from the fact that "goodwill" is included in the sale. The right that the vendee thus obtains against the vendor is itself assignable to a new vendee along with the business. It is not necessary that the original transfer should have been expressly made to the vendee "and his assigns"; nor is it necessary that on the sale to a new vendee the right that the original vendor shall not compete shall be specifically mentioned. The intention that it shall be included in the goodwill and shall go along with the business may readily be inferred. When the right exists, it can ordinarily be specifically enforced by injunction. (emphasis added)
4 Corbin on Contracts § 885, p. 555 (1951). Thus, on subsequent re-sale of a business, all contractual rights received by an original purchaser, including the goodwill of the company, could be validly assigned. 38 Am.Jur.2d Goodwill § 11 (1968).
* * * * * *
... A covenant not to compete will be given general application unless, by its own terms, it specifically expresses an intent that it be a personal covenant flowing only to the original obligee. Thomas v. McCrery, 147 So.2d 467, 469 (La. 1963). An agreement by a seller of his business and goodwill to refrain from competing with the buyer is not personal unless specifically made so, but inures to the benefit of one to whom it is assigned with the business. Knowles v. Jones, 182 Ala. 187, 62 So. 514 (1913)... .
* * * * * *
After reviewing the present case, we are confident that Cooper entered into a valid covenant not to compete, reasonable as to both time and geographic location, as was found by the chancellor. There were no words of restriction placed in the covenant that would specifically express an intent on the part of Cooper to make the covenant personal, and as such it could be validly assigned to Gidden... .
515 So.2d at 903-05.
Whiddon seeks to distinguish Cooper by urging that the Dufour-Herring sale did not include "goodwill," which he contends is a necessary ingredient for covenant assignability, and that the covenant in the Cooper sale was general, while the restriction in this case is personal. However, Dufour and Herring both confirmed that the no compete contract was sold to Herring. Dufour testified:
Q. And at the time of your sale, what of that business did you sell to Herring Gas?
A. I sold all the retail propane operation to Herring. Anything that had to do with the retail business. I got complete out of it.
* * * * * *
Q. Did you sell the tangible assets?
A. I sold everything that had to do with the retail business, and got out of the retail business. I sold everything to Herring Gas Company. Everything that had to do with the retail business went along. I'm no longer in the retail gas business.
Herring further confirmed Dufour's statements as shown by the following colloquy:
A. [F]or me to purchase the assets of Gaston and move into the Purvis *896 area a very viable question would be was there a no compete in existence, and if it was not a no compete then that would have weighed heavily in my decision of whether to purchase the business or not.
Q. And did you understand there was a covenant not to compete?
A. Yes, sir.
* * * * * *
Q. What did you purchase when you purchased from Curtis Dufour the L.P. Gas business?
A. [I] did not purchase the corporation nor stock. I purchased the assets of the corporation and everything that went with it to make it a viable business.
Q. Did that include goodwill?
* * * * * *
A. My answer is yes.
In Smith v. Webb, 176 Ala. 596, 58 So. 913 (1912), it was held that a contract for sale of all chattels connected with a livery constituted the sale of the business and goodwill thereof even though the contract did not specifically mention the sale of the business or goodwill. In United Tool and Industrial Supply Co. v. Torrisi, 248 N.E.2d 266 (Mass. 1969), the court stated: "Broadly speaking, when the entire assets of a business are sold, there is a presumption that goodwill passes."
In 38 Am.Jur.2d Goodwill, § 10 (1968) we are told: "The courts have generally recognized that a contract for the sale of a `business' as such ordinarily passes the goodwill of that business to the purchaser if it is not expressly reserved or excepted." See also Annot., 65 A.L.R.2d 496 (1959).
Whiddon relies on Anderson v. Faulconer, 30 Miss. 145 (1855), as authority to sustain the trial court's holding that the covenant was restrictive and personal, thereby preventing assignability. In Faulconer, Faulconer had sold to Anderson and Stith a newspaper printing company, including the subscription list, goodwill, etc., and entered into the following covenant:
And the said Faulconer also hereby agrees with the said Anderson and Stith that he will not set up or establish in the town of Holly Springs any printing establishment in opposition to the said Anderson and Stith as proprietors of The Holly Springs Gazette.
30 Miss. at 146.
The trial court construed covenant language as sufficiently restrictive to convert the sale of the company's goodwill into a single personal contract. On appeal, the cause was affirmed. We discussed and distinguished Faulconer in Cooper and stated:
The court, in construing the covenant, held that by reason of the words of restriction that have been emphasized, the covenant was personal to Anderson and Stith and did not accrue to the benefit of a purchaser from the administrator of Anderson who had in his life time bought out Stith's interest in the concern. Faulconer at 147. Corbin, in his treatise on contracts, footnotes the Faulconer case as representative of the rule of law that:
If the vendor of a business contracts not to compete with the vendee as long as the vendee remains in the business, an assignee of the vendee would not get any right that the vendor shall not compete with him. (emphasis added)
4 Corbin on Contracts § 885, p. 558 (1951)... .
* * * * * *
In Klein v. Buck, 73 Miss. 133, 18 So. 891 (1895), we noted that the Faulconer case stands for the proposition that where words restricting the usual and pertinent construction of a covenant not to compete are used, such may act to convert the sale of the goodwill of a company into a simple personal covenant. The Klein case presented the Court with a situation where Klein entered into a written contract with Armstrong for the transfer of his insurance business to Armstrong. The contract contained the following covenant:
And the party of the first part [Klein] consents and agrees with the part of the second part [Armstrong] that in *897 addition to maintaining for him the goodwill of said business and its patronage, insofar as his influence may extend, he will not either directly or indirectly as the agent of any insurance company, or solicitor for such company, nor on behalf of any other other than the part of the second part or his assigns, engage in the insurance business in the city of Vicksburg or elsewhere in the territory covered by the business of his own agencies for the full term of five years from this date.
Armstrong later sold the agency to Buck and Hackett. Subsequently, Hackett sold out his interest to Markham. Klein then went into the insurance business in Vicksburg, and Buck and Markham brought suit, obtaining an injunction. On appeal, this Court held that there was no doubt that the covenants purpose was to give value to the business assigned, and, as such its benefits passed to the assignees of Armstrong. As there were no words of restriction in the covenant that would make it personal in nature, the remedy of injunction to prevent its breach was proper. Klein [73 Miss.] at 144, 18 So. at 893.
* * * * * *
... The covenant presently at bar ... lacks the necessary restrictions to make it a personal covenant, ... .
515 So.2d at 903, 904.
Pursuant to our holding in Cooper, it is apparent that the covenant in this case lacks the necessary restrictions to make it a personal covenant.
Whiddon finally reminds us that covenants not to compete are restraints on trade and not favored by the law. The chancellor made this same observation as part of his decision. While this rule has received general acceptance by the courts, a distinction remains between covenants not to compete in an employer/employee setting and those involved in the sale of a business. In Cooper, we articulated:
We recognize that there is a valid and accepted distinction between covenants not to compete in an employer-employee setting, and those dealing with the sale of a business... . 46 A.L.R.2d, pp. 144-147 (1956). The essential line of distinction between the two (2) settings is that:
... the purchaser is entitled to protect himself against competition on the part of the vendor, while the employer is not entitled to protection against mere competition on the part of a servant. In addition thereto, a restrictive covenant ancillary to a contract of employment is likely to affect the employee's means of procuring a livelihood for himself and his family to a greater degree than that of a seller who usually receives ample consideration for the sale of the goodwill of his business. Thus, generally speaking, the territorial extent of a restrictive covenant entered into by the seller or purchaser of a business will be upheld by the courts with much greater readiness than the same provision would as part of a restrictive covenant ancillary to a contract of employment. (emphasis added)

Id. at 144. As such, we must scrutinize to a lesser degree the pertinent facts supporting a finding of reasonableness where the sale of a business's goodwill is involved.
515 So.2d at 905.
We hold that the legal standards applied by the chancellor in the trial court were clearly erroneous, and that the uncontradicted facts adduced during trial require that the judgment in favor of Herring be reversed and rendered.
Therefore, for the reasons stated, the judgment is reversed and rendered as to liability and the case is remanded for trial on damages, if any. Further, the lower court's award of $1,250.00 in attorneys' fees to Whiddon is vacated.
REVERSED AND RENDERED AS TO LIABILITY; REMANDED FOR TRIAL ON DAMAGES; AND LOWER COURT'S AWARD OF ATTORNEYS' FEES VACATED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, SMITH and ROBERTS, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion.
*898 DAN M. LEE, Presiding Justice, dissenting:
With deference for the majority, I cannot join in today's decision to reverse and render. Instead, I would affirm, holding that the covenant not to compete executed by C. Gaston Whiddon was personal to the entity known as Gaston's LP Gas Company, Inc. (Gaston) and not assignable. Furthermore, I do not believe the transaction between Gaston and Herring Gas Company was an effective transfer of the former's rights under the covenant. Finally, the majority purports to render judgment on a claim that is partially moot and partially unliquidated. Accordingly, I must dissent.

I.
I agree with the majority that the proper starting point for deciding this case is the following legal rule:
[A] covenant not to compete will be given general application unless, by its own terms, it specifically expresses an intent that it be a personal covenant flowing only to the original obligee. [citations omitted] An agreement by a seller of his business and goodwill to refrain from competing with the buyer is not personal unless specifically made so, but inures to the benefit of one to whom it is assigned with the business.
Cooper v. Gidden, 515 So.2d 900, 904 (Miss. 1987).
However, I cannot agree with the majority that "it is apparent that the covenant in this case lacks the necessary restrictions to make it a personal covenant." The current covenant is easily distinguishable from the general covenants in Cooper, and Klein v. Buck, 73 Miss. 133, 18 So. 891 (1895). In Cooper, the covenantor promised not to "enter into the sand business within one hundred (100) miles of Meridian." Cooper v. Gidden, 515 So.2d 900, 904 (Miss. 1987). Likewise, in Klein, the covenantor promised not to "engage in the insurance business in the city of Vicksburg." Klein v. Buck, 73 Miss. 133, 18 So. 891 (1895). In obvious contrast to these general covenants is the personal covenant in the current case wherein Whiddon promises "not to compete with Gaston's LP Gas Company, Inc." In my opinion this language is sufficiently restrictive to indicate an intent that the covenant be personal to the corporation and not transferable. Accordingly, I would affirm the chancellor's judgment on this ground.

II.
Furthermore, assuming for the moment that the covenant was not personal, I am not convinced that the transaction between Gaston's LP Gas Company and Herring Gas Company was an effective transfer of Gaston's contractual rights. The majority tells us that the fact that all physical assets were sold to Herring implies that the intangible asset "goodwill" also passed. The passing of goodwill, in turn implies that the rights under the covenant not to compete also passed.
I must admit that I am uncomfortable with the notion of stacking inferences to conclude that a specific contractual right passed. My discomfort grows with examination of the sale agreement. This was a lengthy document explicitly detailing some twenty-eight categories of rights and assets that were intended to be transferred in the transaction. Remarkably, no mention is made of the covenant not to compete. Nonetheless, the majority infers that the rights under the covenant were intended to pass. But the contrary inference is at least equally compelling.
The majority relies on the testimony of Dufour to the effect that "everything" to do with the business was sold to Herring Gas. Obviously, the plain language of the contract is better evidence of what the parties intended than the statements of Dufour after the fact. It is interesting that he retained the name and the corporate entity of Gaston's LP Gas Company, Inc. Common sense and case law both show that a business' name is an important part of its "goodwill." Dodson et al., v. McElreath, 210 Miss. 160, 48 So.2d 861 (1950) (continuity of name is a "chief" element of goodwill). Thus even if we accept the dubious proposition that specific contractual rights under a covenant not to compete pass *899 along with the intangible, often nebulous, goodwill of a business, we cannot be certain that goodwill was intended to be transferred in this particular sale of inventory and customer lists. The chancellor is entitled to deference on such factual matters.
The bottom line in this case is that even if the covenant not to compete executed by Whiddon was assignable, it was owned by Gaston's LP Gas Co., Inc. Herring Gas did not purchase the corporation. Neither did it enter into an agreement specifically assigning it the contract. Instead, Herring Gas negotiated a deal for certain enumerated assets of Gaston. The covenant not to compete was not among the items purchased. Therefore, the covenant is still owned by Gaston's successor corporation and cannot be enforced by Herring Gas.

III.
A final point of contention that I must address relates to the majority's decision to reverse and render. The complaint in this action sought damages and injunctive relief. The claim for injunctive relief is now moot as the amended covenant not to compete expired by its own terms on April 30, 1992. As for damages, the record provides no lower court ruling or proof on this issue. Therefore, even if I were not firmly convinced that affirmance is required, I could not join a decision rendering judgment.

CONCLUSION
For the foregoing reasons, I am constrained to disagree with the majority. I have no doubt that the decision of the chancellor should be affirmed.