562 So.2d 1258 (1990)
STA-HOME HOME HEALTH AGENCY, Inc.
v.
Nancy Simpson UMPHERS, Bobbie Malone & Mid-Delta Home Health Agency, Inc.
No. 07-CA-58971.
Supreme Court of Mississippi.
May 16, 1990.
*1259 Wes W. Peters, Satterfield & Allred, Thomas L. Kirkland, Jr., Kirkland Barfield & Panter, Jackson, for appellant.
James H. Powell, III, Durant, Melvin V. Priester, Jackson, Frank D. Stimley, Madison, Dennis C. Sweet, III, Owens & Owens, Jackson, for appellees.
Before DAN M. LEE, P.J., and ANDERSON and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Sta-Home Home Health Agency (plaintiff below/appellant here) sought injunctive and other relief against Nancy S. Umphers, Bobbie Malone and Mid-Delta Home Health, Inc. (defendants below/appellees here).
After a full hearing on October 5-7, 1987, the learned chancellor rendered his findings and opinion on November 4, 1987, denying appellant any of the relief requested. Being aggrieved, Sta-Home made a timely appeal and assigned as error the following:
(1) Whether the chancellor erred by denying appellant the enforcement of its non-competition agreements;
(2) Whether the chancellor erred in ruling that appellant had come into court with unclean hands;
(3) Whether the chancellor erred in placing any relevancy on the proposals to the physicians;
(4) Whether the chancellor erred in finding that the non-competition agreements were too vague, ambiguous and nonsensical to be enforceable;
(5) Whether the chancellor was clearly erroneous in his finding that the evidence did not support a claim of conspiracy or intentional interference with contract against appellee Mid-Delta;
(6) Whether the chancellor erred in denying appellant the relief requested by its Complaint?

STATEMENT OF THE FACTS
Sta-Home Home Health Agency, Inc., is a non-profit corporation with its principal place of business in Jackson, Mississippi. Sta-Home operates through five separately *1260 maintained corporations whose various principal places of businesses are located throughout the State of Mississippi. Under these corporations, Sta-Home maintains 19 separate offices. The geographic service area for which Sta-Home is licensed to serve by the Mississippi State Department of Health includes the following counties: Hinds, Madison, Rankin, Holmes, Attala, Yazoo and Leake Counties. The subject controversy involves appellant's branch offices in Lexington and Durant, Holmes County, Ms.
Nancy S. Umphers and Bobbie Malone are registered nurses who were formerly in the employ of Sta-Home, but who now work for appellee, Mid-Delta, a similar competing agency.
Umphers began working for Sta-Home around 1976 and Malone began working for the same agency around August 1, 1984. Each entered into a written employment contract with Sta-Home whereby they agreed to perform nursing services on behalf of patients or clients of Sta-Home. On or about December 12, 1980, while in the employ of Sta-Home, Umphers was required by Sta-Home to sign a so-called non-competition agreement. Likewise, in 1984 when Malone went to work for Sta-Home she was required to sign an identical non-competition agreement which was separate from the written employment agreement.
About the last week in June 1987, Doris Sanford, and Joyce Caracci, both of whom were agents and full-time employees of Sta-Home, approached every physician then practicing in the towns of Durant and Lexington in Holmes County, Mississippi, and offered each physician direct contracts with Sta-Home.
The parties dispute Sta-Home's intent and motives for offering the physicians this contract and quarrel over the interpretation of key parts of the proposed contract. Nevertheless, this Court finds that one can certainly read the contract to mean that if accepted as written, each doctor would hire his own nurse or nurses to perform skilled home health visits; that he would be responsible for all pay and benefits to any nurses so hired; and that for each skilled nursing visit performed by said nurses, the physician would be reimbursed by Sta-Home in the sum of Twenty Dollars ($20.00) per skilled nursing visit. After paying the doctor, Sta-Home would keep the remaining portion of the fee. Sta-Home's main function would be to screen the patients to see if they were eligible for home health care and do the paperwork. It is easily conceived how one reading the proposed contract or having the plan explained for the first time could conclude that, in the end, it would mean the termination of a great portion of Sta-Home's nursing staff.
Moreover, once the plan was presented to the doctors, Sta-Home's nightmare began. A couple of doctors stopped referring patients because they felt that Sta-Home, by this proposal, was attempting to improperly buy patient referrals.
Meanwhile, upon learning of the proposed plan through the grapevine and not as a result of communications from Sta-Home, her employer, co-defendant Nancy Umphers became concerned and had a discussion with Doris Sanford, the Regional Director of Nurses for Sta-Home. Ms. Sanford had accompanied Ms. Joyce Caracci, Administrator of Sta-Home (also the wife of Mr. Vic Caracci, Executive Director of Sta-Home), as a representative of appellant to make the proposals to those doctors. At this time Ms. Sanford told Umphers of the proposal and explained it as she understood it. Ms. Sanford confirmed Ms. Umphers' suspicion that this proposal would affect the nurse's employment. Umphers expressed her concern that the contracts were selling out the nurses, i.e., they would eliminate the nurses' jobs with Sta-Home; furthermore, she thought the contract scheme amounted to buying patient referrals and in her opinion the contracts were unethical and probably illegal.
Co-defendant Bobbie Malone also contacted Doris Sanford who told her that she and Ms. Caracci had encouraged Dr. Bills to use her on his staff. To add to the confusion and concerns that had now enveloped Umphers, Ms. Sanford encouraged *1261 both Umphers and Malone to line up their own employment with each doctor before the other nurses who were then under contract with Sta-Home found out about the proposals. Apparently, fearing the loss of her job and dissatisfied with the explanation she was receiving from her supervisor, Umphers began sounding the drums by advising other Sta-Home employees of the developing situation.
Although appellant disputes Umphers' motives for doing so, Umphers tendered her resignation on July 6, 1987, effective July 31, 1987. Thereafter, Umphers set up a meeting for July 7, 1987 with Clara Reed, Administrator and Director of Nursing for Mid-Delta, allegedly to discuss employment possibilities with Mid-Delta. A meeting was indeed held on said date at Mid-Delta's Tchula, Mississippi office, Mid-Delta not then having an office in either Lexington or Durant. At least five (5) Sta-Home employees including both co-defendants were at the meeting.
By this time, a mutinous atmosphere had gripped the ranks of the employee nurses of Sta-Home and by the end of July 1987, twelve (12) employees, including Bobbie Malone, had turned in their resignations and had marched over to the employ of Mid-Delta, which consequently set up new offices in Lexington and Durant. Also, approximately 60 patients were transferred from Sta-Home to Mid-Delta. The after-affect of this melee was best summed up by appellee Umphers when she exclaimed, "the Caraccis have just lost Holmes County."
This Court is impressed with the thoroughness and completeness of the learned chancellor's opinion in denying all relief requested by appellant. We agree with his findings and quote liberally therefrom:
Sta-Home claims that Malone and Umphers wrongfully caused many of the patients they were treating while working for Sta-Home to transfer to Mid-Delta where they continued administering to them. More specifically, plaintiff claims that Malone and Umphers, using private and proprietary information of plaintiff, conspired with Mid-Delta to unfairly compete and to assist Mid-Delta in unfairly competing within plaintiff's licensed geographic service area. Plaintiff further claims (1) that prior to their termination with plaintiff Umphers and Malone conspired with Mid-Delta to solicit Sta-Home's patients to terminate the services of plaintiff and subscribe to the services of Mid-Delta; (2) that Umphers and Malone conspired with Mid-Delta to solicit doctors whose patients were under plaintiff's care to discharge them from plaintiff's care so that they could be picked up and treated by Mid-Delta, Malone and Umphers; and (3) that Umphers and Malone conspired with Mid-Delta to solicit or cause other employees of plaintiff to quit and go to work for Mid-Delta. Plaintiff asserts that the alleged acts of Malone and Umphers constituted a breach of their contracts with plaintiff and a breach of certain duties which they owed plaintiff. Plaintiff also asserts that the actions of the defendants interfered with advantageous business relations between plaintiff and its patients and doctors and that Mid-Delta wrongfully interfered with plaintiff's contract with Malone and Umphers.
The plaintiff sought to enjoin the defendants from soliciting their patients and employees and to enjoin Malone and Umphers from competing with plaintiff within its geographically assigned area or affiliating with an agency in competition with plaintiff.
The Court having duly considered the evidence and briefs of counsel, concludes as follows:
1. The court has jurisdiction of the parties and the subject matter.
2. The evidence fails to establish that Umphers and Malone have violated and breached their contract with plaintiff; the non-competition agreements being unenforceable.
The evidence fails to establish that Umphers and Malone have without good cause breached duties, if any, owed to plaintiff and that Mid-Delta *1262 has breached any duties imposed by state and federal regulations.
The evidence fails to establish that Mid-Delta has interfered with advantageous business relations which existed between plaintiff and its patients and doctors who have recommended a plan of treatment with plaintiff. Further the evidence fails to establish that Umphers and Malone have without good and justifiable cause interfered with advantageous business relations which exist between plaintiff and its patients and doctors who have recommended a plan of treatment with plaintiff.
The evidence fails to show that Mid-Delta has conspired with and aided Umphers and Malone in soliciting patients of Sta-Home, in soliciting doctors who had established a plan of treatment for plaintiff's patients to discharge patients, in soliciting employees of plaintiff to terminate their employment and to unfairly compete with plaintiff or to show that Mid-Delta intentionally interfered with the contracts existing between Malone and Umphers and the plaintiff.
3. Plaintiff relies upon the non-competition agreement which was signed by both Umphers and Malone as a basis for enjoining them from competing with it for a year in its service area. I have read and reread the agreement, but in truth I find it nonsensical. I agree with the defendants that it is too vague, indefinite and ambiguous as to be enforceable.
4. Plaintiff's main business appears to be supplying home nursing service to its patients which means plaintiff hires most nurses on a contract basis and sends them into patients' homes to render the services recommended by their treating physicians. The contracting nurses are paid by the agency based on the number of home visits they make. The plaintiff bills the patient or Medicare for its services. Malone and Umphers were contract nurses for plaintiff while employed by it. Plaintiff apparently wanting to eliminate the headaches attendant to hiring nurses, paying them, maintaining payroll and other records on them, and furnishing employee benefits came up with an idea which it decided to present to some local doctors in Holmes County. Plaintiff proposed to the doctors that they hire their own nurses to furnish home nursing services to their patients rather than referring the patients to the plaintiff who furnished the nurses. The doctors then would refer patients to the plaintiff for billing purposes only and plaintiff would bill the patient or Medicare. For such referrals the doctors would be paid by plaintiff a specific amount for each home visit his nurse made. This proposal was make to the doctors by plaintiff through its representatives in July 1987. In physics there is a principle that for every action there is an equal opposite reaction and that reaction is what occurred when plaintiff's employees including Umphers and Malone found out what plaintiff was attempting to do. Obviously, if the plan succeeded, plaintiff would need few nurses on its payroll and few employees since much of the record keeping would be shifted to the participating doctors. It took no imagination for Malone, Umphers and other employees of plaintiff to realize that they were subject to being terminated by plaintiff when such a plan was put into effect. In fact, representatives of plaintiff informed Umphers and Malone that they should start lining up doctors (and their patients) they could work for rendering home health services. There is little wonder why the revolt of nurses, including Umphers and Malone, and other employees of plaintiff occurred. The plaintiff's action in this regard induced the very situation it now complains of. Plaintiff's grievances arise from its own inequitable conduct and its failure to keep good faith with its employees. The defendants Umphers and Malone suggest that the plaintiff abandoned its contract with them, including the non-competition agreement, when it encouraged *1263 them to seek other employment with local physicians. I agree with that position. However, also available to both Umphers and Malone is the "clean hands" doctrine that he who comes into equity must come with clean hands. The plaintiff's proposed contract which it suggested to the physicians appear to me to be in violation of the clear language of paragraph 700.1 of the Minimum Standards of Operation for Home Health, the licensing authority for home health agencies. It may well be as suggested by Malone and Umphers that the contract floated by plaintiff with the physicians actually constituted violations of law. At a minimum plaintiff's conduct was in my opinion improper and less than fair to its employees. As is stated in 28 Am Jur 2d Injunctions Sec. 35 and cited with approval in Pearl River Valley Water Supply District v. Wright, 186 So.2d 202 (Miss. 1966) an injunction should not issue where the party seeking it "has pursued a course of conduct that precipitated the trouble... ." That is what happened here and the injunctive relief should not be granted.
The practices among doctors, nurses, and home health agencies as revealed by the testimony is [sic] this case leads me to the conclusion that the best interest of our aged and infirmed [sic] deserves close scrutiny by our state licensing department. Nevertheless, I find nothing in the conduct of Malone, Umphers or Mid-Delta that merits the recovery sought by plaintiff.
For the reasons stated the complaint should be dismissed with prejudice at plaintiff's cost.

CONCLUSION
We find abundant evidence in the trial record to support the chancellor's findings of fact. It is well established that our appellate review is upon the entire record and "the evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact, must be accepted." Culbreath v. Johnson, 427 So.2d 705 (Miss. 1983), citing Blakeney v. Blakeney, 244 So.2d 3 (Miss. 1971). We stated the rationale for this rule in Culbreath as follows:
Appellate courts regularly admonish themselves to give substantial deference to findings of fact made by the trier of fact. In a case such as this such admonitions are peculiarly appropriate.
427 So.2d at 708.
Applying our limited principles of appellate review to the case sub judice, we find no grounds to disturb the chancellor's findings at the trial level. Further, we choose not to speak in particular to each assigned error; the chancellor's opinion speaks for itself.
We add a final comment. It is extremely helpful to us when the trial judge sets forth in sufficient detail his/her thinking and reasoning for his/her findings on each issue designated. This expedites the appellate process and aids us immensely. The chancellor in the case sub judice did so and we commend his efforts.
Accordingly, the decree of the Chancery Court of Holmes County, Mississippi, dated November 16, 1987, be and the same is hereby affirmed. Appellant is taxed with all costs of this appeal.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.